THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES H. PIERCE, Appellant.

Third Department, November 11, 1926.

Crimes — violation of Penal Law, § 932, declaring that "A person who, with intent to cheat or defraud another" by false pretense obtains signature of any person to written instrument is guilty of crime — defendant purchased real property from complaining witness, paid part in cash and assigned mortgage on another parcel representing it to be second lien — defendant received said mortgage in exchange for third mortgage held by him but assignment contained agreement subordinating second mortgage to third mortgage — prejudicial error· not to permit defendant to answer whether he intended to cheat or defraud complaining witness — error not cured by permitting him to deny knowledge of subordinating agreement — intent to deceive as to priority is not intent to cheat or defraud — no evidence that parties personally liable on said mortgage were financially irresponsible or that mortgage was not worth face value — question of intent to cheat or defraud must be tested by all circumstances — error to exclude defendant's testimony as to conversation relating to subordination agreement — error to charge that said mortgage was third lien as matter of law.

On a prosecution of the defendant for an alleged violation of section 932 of the Penal Law which provides that " A person who, with intent to cheat or defraud another " by false pretense obtains a signature of any person to a written instrument is guilty of a crime, in which it appears that the crime was based on the execution of a deed by the complaining witness to the defendant on a representation by the defendant that a mortgage transferred as a part of the consideration was a second mortgage, it was error for the court to refuse to permit defendant to answer a question as to whether or not he intended to cheat or defraud the complaining witness, since it appears that the defendant acquired the mortgage so transferred which was· at that time a second lien, by exchanging a third mortgage held by him for said second mortgage, but contends that an agreement whereby the second mortgage was subordinated to the third mortgage was made' without his knowledge.

Said error was not cured by permitting the defendant to swear that he had no knowledge of the subordination agreement.

Furthermore, even though the defendant intended to deceive the complaining witness as to the priority of the mortgage which the defendant gave as part consideration, that does not show that he made the statement with the intent to cheat or defraud the complaining witness.

There is no evidence in the case that any of the four parties personally liable on said mortgage are financially irresponsible, nor is there any evidence that the mortgage was not worth its face value, and the question of the intent of the defendant to cheat or defraud is to be tested by all the circumstances surrounding the transaction.

It was error for the court to exclude the testimony of the defendant as to his conversations with the holder of said mortgage at the time of the agreement, whereby he traded his third mortgage for the mortgage in question which conversation related to the so-called subordination agreement whereby the mortgage in question was made subordinate to the third mortgage.

It was error for the court to charge that said mortgage was a third lien as a matter of law, since the alleged subordination agreement might have been voidable and the question of its validity was a question of fact for the jury to consider. If the defendant's contention is true, the subordination agreement would have been voidable had he remained the owner of the mortgage and the same remedy would be available to the complaining witness.

The charge of the court was also prejudicial in that it represented the complaining witness as being a helpless victim of the transaction and without a remedy, irrespective of the truth or falsity of the defendant's testimony, and it places the defendant in an unfavorable light before the jury by depicting him as willing to abandon the complaining witness without a remedy when, in fact, he had a remedy if the defendant's contention as to the subordination agreement was correct.

APPEAL by the defendant, Charles H. Pierce, from a judgment of County Court of the county of Broome, rendered on the 10th day of April, 1926, convicting him of the crime of violating section 932 of the Penal Law.

*Robert S. Parsons,* for the appellant.

*Urbane C. Lyons, District Attorney [Frank L. Wooster* of counsel], for the respondent.

COCHRANE, P. J. The defendant has been convicted of violating section 932 of the Penal Law which is as follows: "A person who, with intent to cheat or defraud another, designedly, by color or aid of a false token or writing, or other false pretense, obtains the signature of any person to a written instrument, is punishable by imprisonment in a State prison for not more than three years, or in a county jail for not more than one year, or by a fine of not more than three times the value of the money or property affected or obtained thereby, or by both such fine and imprisonment." The indictment charges that the defendant on or about August 29, 1923, with intent to cheat and defraud William B. Bell did obtain his signature to a deed whereby said Bell conveyed to the defendant and his wife as tenants by the entirety thirty-eight acres of land in the town of Windsor, Broome county, N. Y.; that the defendant represented to the said Bell that he was the owner of a certain second mortgage on property in the town of Kirkwood, Broome county, N. Y., upon which there was unpaid the sum of $1,800, and that the defendant assigned said mortgage to said Bell who believing the representations made by the defendant and being deceived thereby was induced by said false representations to accept the said mortgage and that relying on said false representations the said Bell on the said 29th day of August, 1923, executed the said deed and delivered the same to the defendant; that the said representations as to the said second mortgage were untrue and were known by the defendant to be untrue and that the said mortgage was not a second mortgage but a third mortgage lien

upon the property covered thereby; that the defendant by means of said false representations obtained from said Bell the said deed with intent to cheat and defraud said Bell.

It appeared at the trial that in addition to the said mortgage the defendant paid Bell $900 for the property received from him. The defendant admitted that he told Bell or the agent of the latter that the mortgage in question was a second mortgage; that it was subject to a first mortgage of $2,500 and was followed by a third mortgage of $3,500. On July 10, 1923, defendant was the owner of said last-mentioned mortgage of $3,500. The $1,800 mortgage at that time was a second lien and was owned by one Dennis. The defendant and Dennis exchanged mortgages, the latter paying the defendant $1,200 on the exchange. Assignments of the mortgages were executed by the parties respectively on the day last mentioned and at the same time what is called a subordination agreement was executed by both parties whereby it was agreed that the lien of the second mortgage of $1,800 should be subordinated or made subsequent to the lien of the $3,500 mortgage. The two assignments and said agreement were executed simultaneously and all were promptly and at the same time recorded in the office of the clerk of the county. It is the contention of the prosecution that the fact of this so-called subordination agreement was fraudulently concealed by the defendant from Bell and that the statement of the defendant that the $1,800 mortgage was a second lien was false and made by the defendant with the intent to cheat and defraud Bell by procuring from him the execution and delivery of the said deed. The defendant testified that he made no agreement with Dennis in respect to the priority of the mortgages; that he did not know the contents of the agreement he signed to that effect; that he could not read the same because of the absence of his glasses; that he had never previously assigned a mortgage and that he understood and believed that the agreement he signed was of a formal nature relating merely to the exchange of mortgages and that he did not know of the nature of said agreement until some time in the year 1925 and that he believed when he made the representation that the $1,800 mortgage was a second mortgage that such was the fact. Neither Dennis nor the attorney who drew the assignments and the agreement and took the acknowledgment of Dennis and the defendant thereto testified that the defendant read the paper purporting to affect the priorities of the two mortgages. The jury by their verdict have determined the facts against the defendant. We are of the opinion that errors of a substantial nature were committed in the progress of the trial which seriously impair the validity of the verdict.

The defendant as a witness was asked whether he had any intention to cheat or defraud Bell in the transaction in question. On objection of the district attorney he was not permitted to answer. An earnest effort was made by the defendant to get this testimony before the jury. Nothing is better settled in an action of this kind where the intent is a necessary ingredient of the crime than that a defendant may testify directly as to his intent. The learned district attorney does not attempt to justify the ruling but argues that it was not prejudicial to the defendant and this argument is based on the fact that defendant was permitted to deny knowledge of the so-called subordination agreement and to testify that he believed the $1,800 mortgage was in fact a second lien and so it is argued the defendant could not have made that testimony any stronger by testifying that he did not intend to cheat Bell. This argument misconceives the real issue before the jury. In this criminal case the question is not merely whether the defendant knew that the $1,800 mortgage was a third lien although the case seems to have been tried and submitted to the jury as if that were really the question, but assuming that the defendant intended to deceive Bell as to the priorities of the mortgages the question is whether he thereby by such deception intended to cheat or defraud Bell. The one proposition is not necessarily involved or bound up in the other as the following facts will indicate. The defendant and his wife had formerly owned the Kirkwood property covered by the three mortgages. They in fact executed the $1,800 mortgage and executed the bond which accompanied the same which bond and mortgage were subsequently assigned to Dennis and ultimately to Bell as above stated. The mortgage was executed in May, 1922, and was originally for the sum of $2,500. One year later, in May, 1923, defendant and his wife sold the mortgaged property to Flora A. Skinner and Philo McDonald who as a part of the consideration executed to the defendant the said third mortgage of $3,500, and also assumed and covenanted to pay the said second mortgage of $2,500. This transaction was on May 23, 1923, and on the following August 29, 1923, the transaction with Bell occurred. In the meantime $700 had been paid on the mortgage transferred to Bell and $600 had been paid on the first mortgage, reducing it from $3,100 to $2,500. It is apparent that the defendant, his wife, Flora A. Skinner and Philo McDonald were all personally liable for the indebtedness represented by the mortgage assigned to Bell. There is no evidence that any of these parties are financially irresponsible and it must be assumed in the absence of evidence to the contrary that all were solvent August 29, 1923, when Bell received the mortgage in question. It appears that the Kirkwood property was

sold under a foreclosure sale some time in the year 1925 but the price received on such sale does not appear and nothing appears to indicate that the mortgage indebtedness was uncollectible. Furthermore the defendant testified that in his opinion the mortgaged property was worth $11,000 or $12,000 and there is other evidence to the same effect, although a witness for the prosecution fixed the value at $6,500. The price for which the property had ever sold does not appear. The defendant was also acquiring an unincumbered title to the Bell property. In the light of these facts the intent of the defendant cannot be narrowly confined to the simple question as to whether or not he knew that the Bell mortgage was a third lien. That mortgage carried with it his own promise to pay the debt and also the promise to the same effect of his wife and two other individuals. Besides there is evidence as above pointed out that there was abundant equity in the mortgaged property. It may very well be that defendant considered Bell to be amply secure notwithstanding that his mortgage may have been a third lien. The question of his intent is to be tested by conditions as they appeared to him at the time of the transaction. There is in fact no evidence that Bell has been cheated or defrauded. Even a civil action based on fraud could not be maintained by Bell against the defendant on the evidence here presented. It being the law that defendant had a right to testify to his intention it cannot be said that the exclusion of this testimony was unprejudicial in view of the foregoing facts.

It was also error to exclude the testimony of the defendant as to his conversations with Dennis leading up to the execution of the so-called subordination instrument. Dennis himself was permitted to testify in behalf of the prosecution as to his conversations with the defendant on this point but the testimony of the defendant was excluded. The error was partly but not entirely cured by the categorical answer of the defendant denying the testimony of Dennis that it was understood between them that the $1,800 mortgage was to be a third mortgage. There were three different conversations culminating in that subordination agreement and we think it was the right of the defendant to state the negotiations leading thereto as bearing on the question whether he did or did not make such an agreement. The conversations may have thrown light on that question and had a material bearing thereon.

The court charged the jury as follows: " I will state to you that the evidence in this case has established as a fact, and you may accept it as having been established and determined, that said mortgage [the $1,800 mortgage] at the times in question was a third mortgage upon said premises in Kirkwood and not a second

mortgage." This charge was subsequently repeated and was excepted to by the defendant. The court inadvertently was in error. That charge assumed the validity of the subordination agreement as claimed by the prosecution. It virtually took from the jury the question of fact on that point. If the defendant's version was correct the subordination agreement would have been voidable had he remained the owner of the $1,800 mortgage and the same remedy was available to Bell as the owner thereof. Another vice of the charge was that it represented Bell as being a helpless victim of the transaction and without a remedy irrespective of the truth or falsity of the defendant's testimony and it placed the defendant in an unfavorable light before the jury by depicting him as willing to abandon Bell in his helpless plight without a remedy when in fact he had a remedy if the defendant's version was correct.

It is well settled that in a criminal case the burden is on the prosecution to show that errors are unprejudicial. (*People* v. *Smith,* 172 N. Y. 210, 243.) When the district attorney caused the exclusion of the evidence as above indicated he must have thought that its reception might be beneficial to the defendant. That possibility is no less apparent now than it was then. It has been said " that a multiplication of errors even of a technical character may make them so numerous that when considered together they cannot be deemed harmless." (*People* v. *Harris,* 209 N. Y. 70, 79.) The errors above pointed out we do not consider technical but substantial and because of them we are not satisfied that the defendant has been properly convicted.

The judgment of conviction should be reversed and a new trial granted.

All concur.

Judgment of conviction reversed and new trial granted.